Amy L. B. Ginsburg (034423)
GINSBURG LAW GROUP, P.C.
1012 N. Bethlehem Pike, Suite 103, Box #9
Ambler, PA 19002
Telephone: (855) 978-6564
Facsimile: (855) 777-0043
Email: aginsburg@ginsburglawgroup.com

*OF COUNSEL*
THOMASSON PLLC
402 West Broadway #950
San Diego, CA 92101
Telephone: (973) 312-0774
Facsimile: (973) 559-5579
Email: amy@thomassonpllc.com

Attorney for Plaintiff,
WILLIAM HORN

## UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| **WILLIAM HORN,** individually and on Behalf of all others similarly situated, | ) ) ) |
| *Plaintiff,* | ) ) |
| v. | ) **Case No.:** ) |
| **MATRIX MEDICAL NETWORK OF ARIZONA, LLC, and SUPERIOR HEALTHPLAN, INC.** | **)** **Jury Trial Demanded** **)** **)** **)** |
| *Defendants.* | **)** ) |

## CLASS ACTION COMPLAINT

COMES NOW Plaintiff, **William Horn,** ("Plaintiff" or "Mr. Horn"), individually and on

behalf of all others similarly situated, through his counsel, for his Complaint against Defendants

**MATRIX MEDICAL NETWORK OF ARIZONA, LLC** ("Matrix") **and SUPERIOR**

**HEALTHPLAN, INC.** ("Superior") (collectively "Defendants").   In connection therewith, Plaintiff alleges as follows:

<u>Introduction</u>

1.      Plaintiff's Complaint is based on the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. §227 *et seq.*

<u>The Parties</u>

2.      Plaintiff William Horn is an adult citizen who all times relevant to this Complaint resided in in Fresh Meadows, New York.

3.      Plaintiff is a "person" as that term is defined by 47 U.S.C. § 153(39).

4.      Defendant Matrix is an Arizona LLC, which maintains its headquarters at 9201 E. Mountain Road, Ste 220, Scottsdale, Arizona 85258.

5.      Defendant Superior is a Texas corporation, which maintains its headquarters at 4214 Medical Parkway, Ste 202, Austin, Texas 78756.

6.      Defendants are each a "person" as that term is defined by 47 U.S.C. § 153(39).

7.      Defendants acted through their agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and/or insurers.

<u>Jurisdiction and Venue</u>

8.      This Court has subject-matter jurisdiction over the TCPA claims in this action under 28 U.S.C. § 1331, which grants this court original jurisdiction of all civil actions arising under the laws of the United States.

9.      This Court has personal jurisdiction over Defendants as they conduct business in the State of Arizona.

10.      Venue is proper under 28 U.S.C. § 1391(b)(2)

11.     For the foregoing reasons, personal jurisdiction exists, and venue is proper, pursuant to 28 U.S.C. § 1391(b)(3).

### Statement of Relevant Facts

12.     At all times relevant to this Complaint, Mr. Horn owned a cell phone, the number for which was 917-XXX-7115.

13.     Mr. Horn used this cellular phone primarily for residential purposes.

14.     Defendant Matrix is a business entity that provides healthcare solutions, such as in home medical visits, telehealth, and mobile health clinics.

15.     Defendant Superior is a business entity that offers healthcare plans.

16.     Defendants market their products and services, in part, through placing telephone calls to prospective customers' cellular phones.

17.     Defendants placed numerous unwanted calls to Mr. Horn's cell phone using an artificial or pre-recorded voice.

18.     Mr. Horn had no prior business relationship with Matrix or Superior.

19.     Before Defendants began placing telemarketing calls to Mr. Horn's cell phone, Mr. Horn did not provide consent for Matrix and/or Superior to place such telemarketing calls.

20.     Mr. Horn was not in the market for the medical services being offered and had not consented to receive calls from telemarketers selling same.

21.     Prior to the solicitation calls at issue, Mr. Horn never inquired of Defendants about Matrix or Superior products or services.

22.     Beginning in or around December 2020, Defendant Matrix, on behalf of itself and Defendant Superior, began calling Plaintiff's number via an automated telephone dialing system, as defined by 47 U.S.C. § 227(a)(1), and with pre-recorded messages.

3

23.     In or around December 2020, Plaintiff received the following prerecorded message from Defendant Matrix on more than one occasion:

> "Hi my name is Dr. Daniel Castillo, chief medical officer with Matrix Medical Network calling on behalf of your health plan. This is to inform you that you are eligible for a free video wellness call. During these uncertain times your health is more important than ever. This live video visit with a licensed nurse practitioner will provide you access to screening for COVID-19 risks and symptoms. You will also receive about 45 minutes of quality one on one time with the nurse to assess your overall wellness, to review your medications, and answer any questions. Please call my scheduling team at 1-855-214-4807 to learn more. Again that is 1-855-214-4807 Monday through Friday from 8 to 8 and Saturday 8 to 5 eastern time. You can also visit us online at Matrixforme.com/telehealth. We look forward to speaking with you soon."

24.     Plaintiff does not recall the exact dates he received this prerecorded message, but such information would be in the possession of Defendant Matrix and will be determined during the course of discovery.

25.     Defendants called Plaintiff using the following prerecorded message on dates including, but not limited to: March 23, 2021 and April 30, 2021:

> "Hi my name is Teresa and I am calling on behalf of Ambetter from Superior HealthPlan. This is not a sales call. I work for Matrix Medical Network and I want to let you know you are eligible for an effective service that is an important investment in your health which is at no additional cost provided by Ambetter from Superior HealthPlan. Please call me back at 1-855-205-0431 to learn more. Again that number is 1-855-205-0431 and I am calling with Matrix Medical Network on behalf of Ambetter from Superior HealthPlan. Thank you."

26.     Plaintiff avers that Defendants called him on other dates using this same prerecorded message, and will determine these dates through the course of disc

27.     On May 6, 2021, Plaintiff spoke with one of Defendants' female representative and told her to stop calling.

28.     Despite this request to cease Defendants called Plaintiff on May 11, 2021, May 12, 2021, June 9, 2021, and June 16, 2021, using the same prerecorded message from April 30, 2021.

29.     On July 20, 2021, July 28, 2021, July 29, 2021, and September 3, 2021, Defendants called Plaintiff using the following prerecorded message:

> "Hi my name is Sally and I am calling from Matrix Medical Network on behalf of Ambetter from Superior HealthPlan. Preventative care is a key component to healthy living which is why we would like to speak with you about a valuable new service provided at no cost to you by Ambetter from Superior HealthPlan. Please call our toll-free number 1-855-403-0967 or the number displayed on your caller ID between 8am and 11pm eastern time and one of our member relationship coordinators will be happy to assist you. Again, the toll-free number is 1-855-403-0967. Thank you."

30.     Plaintiff received additional invasive and irritating automated telemarketing calls from Defendants on dates including, but not limited to: March 25, 2021, March 26, 2021, April 6, 2021, May 13, 2021, June 11, 2021, June 14, 2021, June 18, 2021, August 2, 2021, September 7, 2021, September 9, 2021, September 13, 2021, September 15, 2021.

**Matrix and Superior: Direct and Vicarious Liability**

31.     Upon information and belief, Matrix placed calls on behalf of Superior.

32.     To the extent Defendant Superior outsourced its illegal robocalling to Defendant Matrix, Superior would still be vicariously liable for calls that violate the TCPA.

33.     On May 9, 2013, the FCC determined that this was not a basis for avoiding liability within a Declaratory Ruling that held that sellers may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside of the United States, as is often the case. Even where third-

> party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain relief. As the FTC noted, because "[s]ellers may have thousands of "independent" marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

May 2013 FCC Ruling, 28 FCC Rcd at 6588 (internal citations omitted).

34.     Moreover, the May 2013 FCC ruling rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal actual agency and immediate direction and control over third parties who place a telemarketing call. Id. At 6587 n. 107.

35.     The evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." Id. At 6593.

36.     Upon information and belief, Defendant Superior hired, permitted, and enjoyed the benefits of Matrix's unlawful robo-calling.

37.     Upon information and belief, Superior acted as a principal to Matrix, who acted as Superior's agent.

38.     Defendant Superior is not permitted under the law to outsource and contract its way out of liability by directing and benefitting from Matrix's unlawful calls.

39.     To the extent Matrix placed unlawful calls on behalf of Superior or for the benefit of Superior, Matrix would be directly liable as the party that caused the unlawful calls to be placed.

40.     Likewise, Matrix would be vicariously liable for the unlawful calls, as it contracted with Superior and benefitted from Matrix's unlawful calls and directed Matrix's violative conduct.

41.     On the other hand, to the extent Superior directly placed unlawful calls to Plaintiff, Superior would be directly liable for such calls.

## Legal Claims

42.     Defendants' calls constituted calls that were not for emergency purposes as defined by 47 U.S.C. § 227(b)(1)(A)(i).

43.     Plaintiff did not provide Defendants prior express written consent to receive calls to his cellular telephones utilizing an ATDS or artificial or pre-recorded voice, pursuant to 47 U.S.C. § 227 (b)(1)(A).

44.     All phone calls Defendants made to Plaintiff invaded Plaintiff's privacy and violated 47 U.S.C. § 227(b)(1).

45.     Plaintiff has reason to believe that Defendants have called, and continue to call, thousands of wireless telephone customers to market their products and services without consent and/or after consumers revoked their consent in a reasonable manner.

46.     In order to redress injuries caused by Defendants' violations of the TCPA, Plaintiff, on behalf of himself and the Classes of similarly situated individuals, brings suit under the TCPA, 47 U.S.C. § 227, et seq., which prohibits certain unsolicited voice calls to cellular phones.

47.     On behalf of Plaintiff and the Class, Plaintiff seeks an award of statutory damages to the Class members, together with costs and reasonable attorneys' fees.

## Class Action Allegations

48.     Plaintiff brings this action pursuant to Rule 23(a), Rule 23(b)(2), and Rule 23(b)(3) of the Federal Rules of Civil Procedure individually and on behalf of the Class, which include: all individuals in the United States who received a phone call made by or on behalf of Matrix and/or

Superior to an individual's cellular telephone, with a pre-recorded message, without prior express consent within the last four years.

49.     Plaintiff reserves the right to modify the Class definitions as warranted as facts are learned in further investigation and discovery.

50.     Plaintiff and the Class members were harmed by Defendants' acts in at least the following ways: Defendant, either directly or through its agents, illegally contacted Plaintiff and the Class via their cellular telephones by using an automated telephone dialing system, thereby causing Plaintiff and the Class to incur certain cellular telephone charges or reduce cellular telephone time for which Plaintiff and the Class members previously paid; and Plaintiff and Class members' privacy was invaded.

51.     The exact size of the Class is presently unknown but can be ascertained through a review of Defendant's records, and individual joinder is impracticable. Defendant made telephone calls to thousands of consumers who fall into the definition of the Classes.

52.     There are many questions of law and fact common to the claims of Plaintiffs and the Classes, and those questions predominate over any questions that may affect individual members of the Classes.

53.     Common questions for the Classes include, without limitation:

   a.  Whether Defendant's conduct violated the TCPA;

   b.  Whether Class members are entitled to treble damages based on the willfulness of Defendant's conduct;

   c.  Whether Defendant made telephone calls to consumers at any telephone number assigned to a cellular phone service using an artificial or prerecorded voice; and

    d.   Whether Defendant and its agents should be enjoined from engaging in such conduct in the future.

54.    Plaintiff's claims are typical of the claims of the other members of the Class. Plaintiff and the Class sustained damages as a result of Defendants' uniform wrongful conduct during transactions with Plaintiff and the Class.

55.    Plaintiff will fairly and adequately represent and protect the interests of the Class, and has retained counsel competent and experienced in complex class actions.

56.    Plaintiff has no interest antagonistic to those of the Class, and Defendants have no defenses unique to Plaintiff.

57.    This class action is appropriate for class certification because Defendants have acted or refused to act on grounds generally applicable to the Class as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class, and making final injunctive relief appropriate with respect to the Class as a whole.

58.    Defendants' practices challenged herein apply to and affect the Class members uniformly, and Plaintiff's challenge of those practices hinges on Defendants' conduct with respect to the Classes as a whole, not on facts or law applicable only to Plaintiffs.

59.    This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy given that joinder of all parties is impracticable.

60.    The damages suffered by the individual members of the Classes will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' actions.

61.     Thus, it would be virtually impossible for the individual members of the Classes to obtain effective relief from Defendants' misconduct.

62.     Even if members of the Classes could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint.

63.     By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Economies of time, effort and expense will be fostered, and uniformity of decisions ensured.

## COUNT I
## VIOLATIONS OF 47 U.S.C. § 227(b) OF THE TCPA

64.     Plaintiff incorporates by reference the allegations of the previous paragraphs as if fully stated in this Count.

65.     Defendants made unsolicited and unauthorized phone calls to Plaintiff's and the Class members cellular telephones for the purpose of marketing products and/or services to Plaintiff and the Class, with the use of an automated telephone dialing system and/or an artificial or prerecorded voice.

66.     Defendants made the phone calls with the knowledge that they did not have the requisite prior express consent and/or that consent had been revoked.

67.     The foregoing acts and omissions of Defendants constitute a violation of the TCPA.

68.     Defendant's conduct invaded Plaintiff's privacy.

69.     As a result of Defendant's violations of 47 U.S.C. § 227, et seq., Plaintiff and the Class are entitled to an award of $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

70.     Because Defendant had knowledge that Plaintiff and the Class revoked consent to the receipt of the aforementioned telephone solicitations, the Court should, pursuant to 47 U.S.C. § 227(b)(3)(C), treble the amount of statutory damages recoverable by Plaintiffs and the Classes.

71.     Plaintiff and the Class are also entitled to and seek injunctive relief prohibiting such conduct in the future.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, William Horn, respectfully prays for judgment against Superior and Matrix as follows:

a.  An order certifying this matter as a class action with Plaintiff as Class Representative, and designating Thomasson, PLLC as Class Counsel;

b.  All actual damages Plaintiff suffered (as provided under 47 U.S.C. §227(b)(3)(A));

c.  Statutory damages of $500.00 per violative telephone call (as provided under 47 U.S.C. § 227(b)(3)(B));

d.  Treble damages of $1,500.00 per violative telephone call (as provided under 47 U.S.C. § 227(b)(3));

e   Injunctive relief (as provided under 47 U.S.C. § 227(b)(3) and (c); and

f.  Any other relief this Honorable Court deems appropriate.

## DEMAND FOR JURY TRIAL

Please take notice that Plaintiff, William Horn demands a jury trial in this case.

Dated:  March 28, 2022                          Respectfully submitted,


                                                /s/ Amy L. B. Ginsburg
                                                AMY L. B. GINSBURG